IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| R.J. INVESTMENTS, LLC, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| THE BOARD OF COUNTY | * | Civil Action No.: RDB-07-1903 |
| COMMISSIONERS FOR QUEEN | | |
| ANNE'S COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Terri Sorrell, Lacrosse Homes, Inc., and R.J. Investments, LLC (collectively, "Plaintiffs"), filed this three-count Complaint against the Board of County Commissioners for Queen Anne's County, Maryland and the Queen Anne's County Sanitary Commission (collectively, "Defendants"). Plaintiffs maintain that Defendants have violated the Fair Housing Act, 42 U.S.C. §§ 3601-3619, and the Civil Rights Act of 1871, 42 U.S.C. § 1983 (prohibiting state action depriving a person of a federally-protected right), by interfering with the water and sewage access designation of a large tract of development property in Queen Anne's County. Plaintiffs claim that Defendants seek to prevent the development of affordable housing in the area, because it would attract a higher percentage of African-Americans to the area. Pending before this Court is Plaintiffs' Motion for Partial Summary Judgment (Paper No. 41) and Defendants' Motion for Summary Judgment (Paper No. 43). The parties have fully briefed the issues and oral argument was presented to this Court on December 15, 2009. For the reasons that follow, Plaintiffs' Partial Motion for Summary Judgment (Paper No. 41) is DENIED. Defendants' Motion for Summary Judgment (Paper No. 43) is GRANTED with respect to the

claims of Terri Sorrell and Lacrosse Homes, Inc., as they lack standing to bring this action, and

GRANTED as to Plaintiff R.J. Investments, LLC's Due Process claim under the Civil Rights Act

(Count III).  However, said Motion is DENIED as to the claims of R.J. Investments, LLC,

alleging a Fair Housing Act violation (Counts I and II) and an Equal Protection violation under

the Civil Rights Act (Count III).

## **BACKGROUND**

Plaintiff R.J. Investments, LLC ("R.J.") is a developer that intended to begin developing

a planned residential community on a 145 acre piece of property (the "Property") in Grasonville,

Queen Anne's County, Maryland.  Plaintiff Lacrosse Homes, Inc. ("Lacrosse Homes") was a

leading candidate to become the builder for proposed development.[1]  Plaintiff Terri Sorrell

("Sorrell") is an African-American woman who seeks affordable housing in Queen Anne's

County.  Defendant Board of County Commissioners (the "Board") plays a vital role in the

development process for Queen Anne's County properties, including making decisions regarding

water and sewage amendments.  When making these determinations, the Board sits as the

Sanitary Commission.  Queen Anne's County 2006 Comprehensive Water and Sewage Plan §

1.3.1.

Plaintiffs claim that the Defendants violated the Fair Housing Act by denying R.J.'s

request that the Queen Anne's County 2006 Comprehensive Water and Sewerage Plan

("CWSP") be amended to upgrade the water and sewage category assigned to the Property so

that it could receive water and sewage access within three years, rather than within four to ten

years.  Plaintiffs also claim that Defendants' violated §1983 of the Civil Rights Act by depriving

them of their constitutional rights, including procedural due process and equal protection,

---

[1] R.J. is owned by John Stamato, Lindsay Dixon and M. Thomatz; Lacrosse Homes is solely
owned by Lindsay Dixon.  Defs.' S.J. Mem. Ex. 2 at 7-9.

because denying this requested amendment made it impossible for R.J. to develop the Property. Plaintiffs further claim that this developed property would have included affordable housing that would have attracted minorities to the area.  Defendants assert that Sorrell and Lacrosse Homes do not have standing to bring this action, and that the Plaintiffs have not established any Fair Housing Act violations.[2]

Queen Anne's County, Maryland is a rural agricultural county located on Maryland's Eastern Shore.  To build on land in Queen Anne's County, a developer must attain sketch plan approval from the County's Planning Commission, demonstrate to the Board of County Commissioners that the property can be adequately served by the County's sewer and water systems, and comply with a series of other environmental and regulatory requirements.  Queen Anne's County Code § 18:1.  Additionally, under a 2004 law, 10% of each new residential development must consist of moderately-priced dwelling units ("MPDUs") that are affordable to homebuyers earning 80 % of the area's median income.  QAC Code § 18:1-108.  To purchase or rent an MPDU in Queen Anne's County, an individual must establish, among other requirements, that he or she has a good credit rating, steady income, is able to afford such a home and is not a current home owner.  QAC Code § 18:1-108.

On April 22, 2003, Hailey-Ribera, LLC, assigned a contract to purchase the Property to R.J. Investments, LLC.  R.J. accepted assignment of the contract with the understanding that the Property had previously been approved for 142 residential units and had a water and sewerage designation of W-1/S-1, meaning that it was immediately eligible for public water and sewer

---

[2] Defendants also initially maintain that the Board of County Commissioners is the only proper Defendant.  However, Defendants provide little support for this argument, other than to say that the act of denying the amendment request was a legislative act.  Defs.' S.J. Mem. at 9.  As explained in this Court's previous Memorandum Opinion (Paper No. 17), the Defendants' actions were legislative, but that does not preclude their being sued in their official capacities. Since the Board sits as the Sanitary Commission when making decisions regarding water and sewage amendment requests, both entities are properly named Defendants.  2006 CWSP § 1.3.1.

service.[3]  Despite this understanding, on May 27, 2003, Defendants advised R.J. that the capacity of the local sewage plant was currently "inadequate to support the proposed development."  However, only a short time later the County entered into a contract to expand the existing Kent Narrows/Stevensville/Grasonville Waste Water Treatment Facility ("the KNSG facility").  The KNSG facility would have the capacity to serve the Property once it was expanded and fully operational.

On May 5, 2005, R.J. submitted a sketch plan for approval to develop the Property, now called "Sayer's Choice."  The development was projected to consist of 127 single family homes and 41 townhomes, including the minimum 10% requirement of moderately-priced dwelling units (17 of the total 168 units).  For reasons that remain unclear, the Commission did not initially approve of this proposed sketch plan.

In February 2006, Defendants adopted the 2006 Comprehensive Water and Sewerage Plan, which changed the designation of Sayer's Choice to W-3/S-3, meaning that the Property would receive water and sewer service within 4-10 years.   Pls.' S.J. Mem. Ex. 9.  This was a significant change in designation because under the new CWSP a developer could not proceed with the subdivision process unless a property has a water and sewage designation of at least W-2/S-2, meaning that a property will receive water and sewer service within one to three years. However, the 2006 CWSP states that a property owner may annually request an amendment of their property's water and sewage designation.  2006 CWSP § 5.14.2.1.  Thus, shortly after this change in designation, R.J. applied for an amendment to the 2006 CWSP, seeking an upgrade to W-2/S-2 so that they could continue with the development process.  Pls.' S.J. Mem. Ex. 8.  This is the amendment at issue in this case.

---

[3] Under the Queen Anne's County 1996 CWSP, there were only two service designations: 1) no planned service, and 2) W-1/S-1 (immediate service).

On September 14, 2006, R.J. received sketch plan approval.  Pls.' S.J. Mem. Ex. 12 at 11.

The Queen Anne's County Planning Commission also recommended that Defendants grant

R.J.'s water and sewage amendment request.  Nonetheless, on May 5, 2007, Defendants

unanimously denied R.J.'s water and sewage category amendment request.  Pls.' S.J. Mem. Ex.

13.  Commissioner Gene Ransom stated that the primary reasons for the Defendants' denial

were:

> 1) the new sewer plant, KNSG, as expanded, was not operational; and
> 2) the project was "only doing the minimum required by law for affordable housing."

*Id*.  Commissioner Ransom also explained that this was a denial "at this point and time," and that

Defendants would be willing to reconsider Plaintiffs' request for an amendment in one to two

months, after the new KNSG plant became fully operational.  *Id*. at 72-75.  As a result of the

Defendants' refusal to grant the amendment, R.J.'s proposed development was unable to go

forward as planned.  Notably, the KNSG plant became operational just one week after this vote,

on May 15, 2007.

## <u>PROCEDURAL HISTORY</u>

On July 19, 2007, Plaintiffs Enterprise Homes, Inc., Reverend Marie Robinson, Terri

Sorrell, Lacrosse Homes, Inc. and R.J. Investments, LLC, filed a Complaint alleging violations

of the Fair Housing Act, 42 U.S.C. §§ 3601-3619, and the Civil Rights Act of 1871, 42 U.S.C. §

1983.  On November 5, 2007, Defendants filed a Motion to Dismiss or, in the Alternative, for

Summary Judgment (Paper No. 5).  On June 19, 2008, this Court granted Defendants' Motion to

Dismiss Enterprise Homes, Inc. as a Plaintiff for lack of standing and granted Defendants'

Motion to Dismiss the charges against the Commissioners in their individual capacities (Paper

No. 18).[4]  Defendants' Motion to Dismiss was denied as to all counts against the Board of

County Commissioners, and the Queen Anne's County Sanitary Commission (Paper. No. 18).

The parties conducted discovery on those claims.  On April 15, 2009, Plaintiffs filed a Motion

for Partial Summary Judgment (Paper No. 41).  On April 29, 2009, Defendants filed a Motion for

Summary Judgment (Paper No. 43).  A hearing was held on these cross motions on December

15, 2009.  On December 17, 2009, this Court granted Defendants' Motion for Summary

Judgment as to Reverend Marie Robinson, dismissing her for lack of standing (Paper No. 52).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

material fact is one that "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Id.*  In considering a motion for summary judgment, a judge's function is limited to

determining whether sufficient evidence exists on a claimed factual dispute to warrant

submission of the matter to a jury for resolution at trial.  *Id.* at 249.  "A party opposing a properly

supported motion for summary judgment 'may not rest upon the mere allegations or denials of

[his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for

---

[4]  In the Complaint, the individual members of the Board are sued "in their capacities as County
Commissioners for Queen Anne's County, Maryland, and in their capacities as Sanitary
Commissioners, and the Queen Anne's County Sanitary Commission."  When an individual is
sued in his official capacity, the suit is essentially against the governmental entity.  *Kentucky v.
Graham*, 473 U.S. 159, 165-66 (1985).  Thus, this suit is brought against the Board, and Board
sitting as the Sanitary Commission, in their entirety.

trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer,* 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories

and material facts are dispositive, they "may be probative of the non-existence of a factual

dispute." *Shook v. United States,* 713 F.2d 662, 665 (11th Cir. 1983) (citation omitted).

## ANALYSIS

### I.       Standing

In their motion, Defendants argue that Terri Sorrell and Lacrosse Homes do not have

standing to bring this action.  The Constitution limits the jurisdiction of Federal courts to "case[s]

or controvers[ies]." U.S. Const. Art. III § 2.  As the Supreme Court held in *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992), to show standing Plaintiffs must generally: 1) suffer an

injury in fact; 2) that was casually connected to governmental conduct; and 3) that was likely to

be addressed by a favorable ruling.

It is easier to prove that a party has standing to bring a Fair Housing Act claim than a

constitutional claim because Fair Housing Act suits have more lenient standing requirements.

The Supreme Court has explained that Congress intended standing under the Fair Housing Act to

"extend to the full limits of Article III," *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91,

103, n. 9 (1979), and that "[t]he normal prudential barriers to standing may not be set up as

obstacles to the maintenance of actions under the Fair Housing Act."  *Havens Realty Corp. v.*

*Coleman*, 455 U.S. 363, 372 (1983).  *See also Trafficante v. Metropolitan Life Insurance,* 409

U.S. 205 (1972).  Thus, "the sole requirement for standing to sue under [the FHA] is the Article

III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he

has suffered a 'distinct and palpable injury.'" *Havens Realty Corp. v. Coleman*, 455 U.S. 363,

372 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).[5]

---

[5] Since neither Sorrell nor Lacrosse Homes can prove standing under the broader and more
lenient Fair Housing Act analysis, this Court need not engage in a separate standing analysis for
the constitutional claims which apply an even more stringent standard. *See Mackey v.*

A.      **Terri Sorrell**

Defendants argue that Terri Sorrell does not have standing to bring this action because she was not injured by their rejection of R.J.'s proposed amendment.  This Court finds a recent Fourth Circuit decision, *Greengael, LC v. Bd. of Supervisors*, 313 Fed. Appx. 577 (4th Cir. 2008), instructive on this issue.  In *Greengael*, a developer's subdivision plan that included low and moderate income housing was denied.  Two individual plaintiffs sued the Board of Supervisors for Culpeper County, Virginia, alleging that the refusal by the County denied them affordable housing because it prevented them from purchasing in the proposed development. The Fourth Circuit held that "the denial of the opportunity to purchase housing was too remote and speculative to constitute an injury in fact," and affirmed the decision by the United States District Court for the Western District of Virginia, to dismiss the individual plaintiffs for lack of standing.  *Id*. at 581.  The District Court had analyzed the following events that had to take place for the individual plaintiffs to successfully obtain affordable housing in the development:

> 1) The development itself would have had to have cleared further regulatory and environment hurdles, 2) [the Developer] would have had to build the development as planned, without major changes, 3) the project would have had to receive adequate financing as well as possible Federal subsidies, 4) after completion, the [individual Plaintiffs] would have had to have adequate resources to purchase housing, and 5) a unit or units would have had to be available for the [the Plaintiffs] to purchase or lease.

---

*Nationwide Ins. Cos.*, 724 F.2d 419, 422 (4th Cir. 1984) (holding that Mackey's alleged injury, which satisfied Article III standing requirements, was enough to sustain the Fair Housing Act claim, but not the Civil Rights Act claims); *cf. ACORN v. County of Nassau*, 2006 U.S. Dist. LEXIS 50217, at *20 (E.D.N.Y.  July 21, 2006) ("Further . . . standing analysis under the FHA is broader than for the constitutional claims.  Hence, the Court does not engage in a separate standing analysis for the FHA claims as to each plaintiff because it finds standing exists under the more stringent constitutional analysis.") (internal citations omitted).

*Greengael, LC v. Board of Supervisors of Culpeper County, Va.*, 2007 WL 1597695, at *5 (W.D. Va. June 1, 2007).

The events that would have to transpire to ensure that Sorrell could obtain affordable housing on the Property are almost identical to those in *Greengael*, and the chain of events is too long and attenuated to establish standing.  First, as the case at hand demonstrates, R.J. must clear a number of regulatory and environmental hurdles, including attaining a water and sewage category upgrade.  Second, R.J. would have to develop Sayer's Choice without making major changes.  As Lindsay Dixon, an R.J. partner and Lacrosse Homes' Corporate Designee, admitted in his deposition, R.J. was open to selling the Property, rather than building upon it, if the right offer came along.  Defs.' S. J. Mem. Ex. 6 at 99.  If R.J. sold the Property, there is no way of knowing when, if ever, the Property would be developed for residential use.  Third, the development would have to receive adequate financing, which is especially difficult to attain during periods of economic downturn.  Fourth, Sorrell would need adequate resources to purchase an MPDU when the development was ultimately completed.  Even taken in the light most favorable to the plaintiff, the evidence with respect to Sorrell's future earning power, and thus whether she would eventually have the finances to purchase an MPDU, is weak at best. Fifth, presuming Sayer's Choice was ultimately developed, a unit would have had to be available for Sorrell to purchase.  As the District Court explained in *Greengael*, "This is a very long chain of inferences, and one which is far too speculative for this Court to conclude that the [individual Plaintiffs] actually suffered any injury at all."  *Id*. at *1.  For similar reasons, this Court finds Plaintiff Sorrell lacks standing.

B.      **Lacrosse Homes**

Defendants also assert that Lacrosse Homes does not have standing to bring this action

because it had no "concrete or particularized interest" in the development.  The Fourth Circuit

has held that to prove an injury-in-fact a plaintiff must "suffer an invasion of a legally protected

interest which is concrete and particularized, as well as actual or imminent."  *Friends of the*

*Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 154 (4th Cir. 2000) (en banc)

(citing *Defenders of Wildlife,* 504 U.S. at 560).  Thus, to prove standing an alleged injury must

not be "conjectural or hypothetical." *Laidlaw,* 528 U.S. at 180; *Defenders of Wildlife,* 504 U.S. at

560 (internal quotations omitted).

The injuries that Lacrosse Homes allege are speculative at best.  Lacrosse Homes

maintains that there was a "substantial probability" that R.J. was going to hire it as the builder

for the Sayer's Choice development project.  Pls.' S.J. Mem. At 5.  Lacrosse Homes therefore

asserts that it suffered significant damages and lost profits as a result of being deprived of this

opportunity.  As an initial matter, R.J. had no legal obligation to use Lacrosse Homes as its

builder.  In fact, Dixon, an R.J. partner and the sole owner of Lacrosse Homes, acknowledged

that R.J. considered selling the land rather than developing it.  Defs.' S.J. Mem. Ex. 6 at 99.  As

Dixon stated in his deposition: "[O]nce we got to the eleventh hour, if someone were to come

along and make an offer [to buy the land], we would all sit down and say hey, what makes sense

for the partnership."[6]  *Id*. at 119-20.  Furthermore, Dixon concedes that Lacrosse Homes has

been reimbursed for all of its expenditures related to the development of the Property.  *Id.* at

116.  Thus, at most Lacrosse Homes had an inchoate expectation of earning money as the builder

---

[6] When asked whether Lacrosse Homes would have been the builder of the project had it gotten
water and sewage approval, Dixon similarly responded: "That was the game plan.  What we
probably, most likely we would have built the project, but we probably would have, if people
made offers to buy the subdivision or be the builder and it was better for the three of us, then we
would meet and make that call."  Pls.' S.J. Mem. Ex. 6 at 99.

if it was not outbid on the project – presuming R.J. did not sell the land in the first place.  Given the entirely speculative nature of Lacrosse's injury, this Court finds that Lacrosse Homes does not have standing to state a claim against the Defendants.

## II.     Fair Housing Act Claims (Counts I and II)[7]

R.J., the only remaining Plaintiff, maintains that Defendants' actions violated the Fair Housing Act by interfering with their development of the Property.  Both R.J. and Defendants move for summary judgment as to this claim.  In *Smith v. Clarkton*, 682 F.2d 1055 (4th Cir. 1982), the Fourth Circuit weighed four factors when determining whether town officials violated the Fair Housing Act in a case involving similar facts:

(1)  How strong is the plaintiff's showing of discriminatory effect;
(2)  Is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis*[,426 U.S. 229 (1976)];[8]
(3)  What is the defendant's interest in taking the action complained of; and
(4)  Does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing.

*Id.* at 1065.  These are the main factors that must be evaluated when considering a claim under the Fair Housing Act.

In this case, R.J. has alleged that Defendants' denial of its amendment had a discriminatory effect on minorities, since minorities were more likely to purchase the affordable housing that was to be built on the Property.  There is no dispute that because R.J.'s amendment was denied, 17 MPDUs were not built that might otherwise have been.  R.J. also supports its contention that a disproportionate number of the buyers of these MPDUs would have been

---

[7] As explained in this Court's Memorandum Opinion (Paper No. 17), though Count II is titled and phrased as a Civil Rights Act §1983 claim, it essentially alleges that Defendants have violated Plaintiffs' rights under the Fair Housing Act.  Thus, the same analysis applies to both Counts I and II.

[8] See *Thompson v. United States HUD*, 348 F. Supp. 2d 398, 417 (D. Md. 2005), explaining that this means "i.e., is there some kind of 'mens rea,' though not necessarily the discriminatory 'purpose' required by *Washington v. Davis* and its progeny."

minorities with an expert "impact analysis" study.  Pls.' S.J. Mem. Ex. 15.  R.J. supplements this study with various supplemental reports showing the need for affordable housing in Queen Anne's County, and that there was insufficient affordable housing available at the time of the amendment request.  Pls.' S.J. Mem. Ex. 16.  Thus, R.J. has made a showing sufficient to establish that an issue of fact exists as to whether Defendants' actions had a discriminatory effect on minorities.

R.J. maintains that Defendants intended to discriminate against minorities in rejecting this amendment.  R.J. alleges that the reasons given for rejecting the amendment request by Commissioner Gene Ransom, a member of the Board of County Commissioners (and thus also the Sanitary Commission), are pretextual.  R.J. notes that Commissioner Ransom's comments that the amendment request was denied because R.J.'s proposed development was "only doing the minimum required by law for affordable housing."  Pls.' S.J. Mem. Ex. 13 at 72-75.  While this statement indicates a concern for providing affordable housing on its face, R.J. argues that it was, in fact, meeting the requirements of the law.  Commissioner Ransom's statement implies that to obtain amendment approval R.J. needed to meet a *higher* standard than that required by law with respect to providing affordable housing.  There is an issue of fact with respect to whether R.J. was impermissibly held to a higher standard.  Accordingly, R.J. has produced evidence that meets the minimal requirement to show that Defendants intended to discriminate when they denied R.J.'s amendment request.  Given the wide range of facts in dispute and the lack of clarity in the record, this Court finds that there is a genuine issue of material fact with respect to Plaintiff's Fair Housing Act claim.  Thus, this claim will proceed to trial.

### III.    Civil Rights Act Claims (Count III)

R.J. contends that Defendants violated the Civil Rights Act by denying its proposed amendment without any legal justification and by denying it "procedural due process and equal

protections."[9]  The Fourth Circuit has held that a party may have third-party standing to bring a claim under the Civil Rights Act where the plaintiff is essentially the "'only effective adversary' of the unlawful racial discrimination." *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 422 (4th Cir. 1984) (§§ 1981 and 1982).  In *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983), the Fourth Circuit held that a real estate developer, which was prevented from constructing low income housing by threats of zoning changes stemming from opposition to the coming of black renters to neighborhood, had standing under § 1983 where there would have been no potential black plaintiffs because the apartments had never been constructed or offered for rent.  The court explained: "[I]f defendants singled Scott [out] for disadvantageous treatment because of his willingness to house minority tenants, then Scott in his own stead suffered injury to his right to be free from official discrimination." *Id*. at 1415.  *See also Clifton Terrace Assoc. v. United Tech*., 929 F.2d 714, 721 (D.C. Cir. 1991) (explaining that the developer is in the best position to vindicate the rights of potential home owners in cases where the direct victims of preemptive discrimination cannot yet be readily identified); *DeVergnes v. Seekonk Water District*, 601 F.2d 9 (1st Cir. 1979) (holding a corporation that planned to construct a low-income housing project had standing to bring suit pursuant to Civil Right Act § 1983 alleging that the defendant refused to extend water services because the project would attract blacks to the area).  Thus, R.J., as the developer, is a proper plaintiff to assert the rights of prospective minority tenants victimized by alleged racial discrimination.  *Scott*, 716 F.2d at 1415.

---

[9] As discussed in section I, supra, Sorrell does not have standing to bring a claim under the Fair Housing Act, thus she cannot prove she has standing to bring a claim under the Civil Rights Act. Accordingly, this Court need not address any potential Civil Rights Act claims that could have been brought by Sorrell.

**A.      Procedural Due Process Claim**

In order to state a valid procedural due process claim, R.J. must demonstrate: (1) that it had a property interest; (2) of which the County deprived it; (3) without due process of law. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 826 (4th Cir. 1995).  The Fourteenth Amendment does not create property interests. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  In order for a plaintiff to have a constitutionally protected property interest in a particular benefit, he must "have a legitimate claim of entitlement to it."  *Id.*; *see also Mallette v. Arlington County Employees' Supplemental Retirement Sys. II*, 91 F.3d 630, 634-35 (4th Cir. 1996).  Due process of law generally requires that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  However, "to determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990) (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

R.J. cannot prevail on this procedural due process claim because it had no constitutionally protected property interest.  Defendants had discretion under the 2006 CWSP to deny R.J.'s water and sewage category amendment request.  As the Fourth Circuit explained in *Gardner v. City of Baltimore Mayor & City Council,* 969 F.2d 63, 68 (4th Cir. 1992):

> [W]hether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest.

*Id*. at 68.   Under this standard, a cognizable property interest exists "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a prior application is virtually assured." *Id. (citing RRI Realty Corp. v. Inc. Vill. of Southampton,* 870 F.2d 911, 918 (2d Cir. 1989)).   The 2006 CWSP states: "The [Board of] County Commissioners may approve, approve with conditions, disapprove, or defer requests [for water and sewage category amendments]." 2006 CWSP § 5.16.4.10.   Given the Defendants' broad discretion to approve or reject an amendment request, R.J. cannot claim it has a legitimate entitlement to the upgrade.[10]

Furthermore, even if R.J. did have a cognizable property interest, the procedures Queen Anne's County afforded to R.J. to apply for an amendment to their water and sewage designation were more than adequate.   The procedures due in cases such as this one involving regulation of land use through general police powers are not extensive.   *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 436 (4th Cir. 2002).   First, R.J. was given the opportunity to submit the documentation necessary to qualify for a water and sewage category amendment.   Second, before making a determination about its amendment request, the County considered R.J.'s documentation, expert reports and held a public hearing on the issue.   Notably, there were also postdeprivation remedies available to R.J. to rectify what it believed to be a wrongful denial of its amendment request.   As the 2006 CWSP explains:

> If the amendment is denied, the applicant may: (1) withdraw the application; or (2) revise the proposed development and resubmit to the Planning Commission; or (3) have the application remain on file for the Sanitary Commission's reconsideration during the next scheduled hearing.

---

[10]   Case law also indicates that there is no constitutionally protected right to water and sewer service access under either Federal or Maryland state law.   *See Neifert v. Dep't of the Env't*, 395 Md. 486, 516 (Md. 2006) ("Access to sewer service is not a constitutionally protected property interest."); *see also Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 286-87 (4th Cir. 1998) (affirming that access to government provided sewer service is not a constitutionally protected right under Virginia law).

2006 CWSP at 185-96.  At the very least, R.J. could have asked Defendants to reconsider its

amendment request during the next scheduled hearing, at which time the new sewage plant

would be operational.  *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 437-38 (4th Cir.

2002).  *See also Diva's Inc. v. City of Bangor*, 411 F.3d 30, 43 (1st Cir. 2005) ("property is not

denied without due process simply because a local planning board rejects a proposed

development for erroneous reasons or makes demands which arguably exceed its authority under

the relevant state statutes.").  Accordingly, R.J.'s Due Process claim cannot succeed.

### B.    Equal Protection Claim

R.J. alleges that Defendants engaged in a pattern of conduct that was motivated by race

discrimination, thereby violating the Equal Protection Clause of the Fourteenth Amendment.[11]

To assert an Equal Protection claim in the Fourth Circuit, a plaintiff must show intentional or

purposeful discrimination; it is not enough to prove that a benefit was denied to one party while

conferred on another.  *Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 819 (4th

Cir.1995).  This discrimination can be demonstrated through a facially discriminatory act, or by

providing extrinsic evidence such that a discriminatory system designed to favor one class over

another can be inferred from the circumstances.  *Id.*  In *Sylvia,* the Fourth Circuit recognized

several factors that are probative of whether a decision-making body was motivated by

discriminatory intent:

> (1) evidence of a 'consistent pattern' of actions by the decision-making body
> disparately impacting members of a particular class of persons; (2) [the] historical

---

[11] Defendants contend that the Complaint "does not once mention race or intentional
discrimination based upon race or any other invidious category."  Defs.' S.J. Mem. at 39.  While
awkwardly worded, the Complaint alleges that Defendants adopted "a pattern and practice of
delay" to prevent the development of the Property, that this had "a discriminatory effect on the
ability of African Americans and other protected groups to obtain housing in Queen Anne's
County, thereby violating… the Civil Rights Act," and requests a permanent injunction
"enjoining Defendants from engaging in any further discriminatory housing practices."  Compl.
at  ¶¶ 62, 63.  These contentions are sufficient to establish a race-based Equal Protection claim.

> background of the decision, which may take into account any history of discrimination by the decision-making body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decision-makers on the record or in minutes of their meetings.

*Sylvia Dev. Corp.,* 48 F.3d at 819 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266-68 (1977)).  Because the 2006 CWSP is a facially neutral ordinance, R.J. bears the burden of demonstrating the intent on the part of Defendants to purposefully discriminate against it.  *Sylvia Dev. Corp.,* 48 F.3d at 819.

R.J. does not thoroughly address the factors in the test articulated in *Sylvia*, but instead states that the evidence it submits in connection with its Fair Housing Act claim support a violation of the Equal Protection Clause.  Pls.' S.J. Mem. at 28.  Indeed, much of the same evidence that was considered under the Fair Housing Act claim would be analyzed under *Sylvia* – such as the process by which Defendants rejected R.J.'s proposed amendment, and the statements made by Commissioner Ransom at the public hearing.  The evidence R.J. provides under its Fair Housing Act claim is sufficient to show that there is also a genuine issue of material fact as to whether Defendants intended to discriminate against minorities by denying R.J.'s amendment request.  Accordingly, R.J.'s Equal Protection claim will proceed to trial.

Thus, Plaintiffs' Partial Motion for Summary Judgment (Paper No. 41) is DENIED. Defendants' Motion for Summary Judgment (Paper No. 43) is GRANTED with respect to the claims of Terri Sorrell and Lacrosse Homes, Inc., as they lack standing to bring this action, and GRANTED as to Plaintiff R.J. Investments, LLC's Due Process claim under the Civil Rights Act (Count III).  However, said Motion is DENIED as to the claims of R.J. Investments, LLC, alleging a Fair Housing Act violation (Counts I and II) and an Equal Protection violation under the Civil Rights Act (Count III).

A separate Order follows.


Dated: December 29,  2009                                    /s/
                                                            Richard D. Bennett
                                                            United States District Judge