IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

R.J. INVESTMENTS, LLC,          *

    Plaintiff,             *

v.                         *

THE BOARD OF COUNTY        *    Civil Action No.: RDB-07-1903
COMMISSIONERS FOR QUEEN
ANNE'S COUNTY, MARYLAND, *et al.*,  *

    Defendants.         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff R.J. Investments LLC ("Plaintiff" or "R.J.") filed this three-count Complaint

against the Board of County Commissioners for Queen Anne's County, Maryland, the Queen

Anne's County Sanitary Commission, and the members of the Board of County Commissioners,

Eric S. Wargotz, Courtney M. Billups, Paul L. Gunther, Gene M. Ransom, III, and Carol R.

Fordonsky (collectively, "Defendants").  Plaintiff maintains that Defendants have violated the

Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA") and the Equal Protection Clause of the

United States Constitution under the Civil Rights Act of 1871, 42 U.S.C. § 1983, by interfering

with the water and sewage access designation of a large tract of Plaintiff's development property

in Queen Anne's County (the "County").  Plaintiff claims that Defendants seek to prevent the

development of affordable housing in the area because it would attract a higher percentage of

African-Americans to the County.  Jurisdiction over this case is based on federal question

jurisdiction under 28 U.S.C. § 1331.  This Court conducted a bench trial from March 8, 2010

through March 11, 2010, and, in the accompanying Order, enters Judgment in favor of

Defendants the Board of County Commissioners for Queen Anne's County, Maryland, the

Queen Anne's County Sanitary Commission and the members of the Board of County

Commissioners in their official capacities, Eric S. Wargotz, Courtney M. Billups, Paul L.

Gunther, Gene M. Ransom, III, and Carol R. Fordonsky on all counts.

Prior to conducting the four-day bench trial, the procedural posture of this case is as

follows:  On July 19, 2007, Plaintiffs Enterprise Homes, Inc., Reverend Marie Robinson, Terri

Sorrell, Lacrosse Homes, Inc. and R.J. Investments, LLC, filed a Complaint against Defendants

the individual members of the Board of County Commissioners for Queen Anne's County,

Maryland, in their capacity as members of the Board and as members of the Queen Anne's

County Sanitary Commission, alleging claims under the Fair Housing Act, 42 U.S.C. §§ 3601-

3619, and under the Civil Rights Act of 1871, 42 U.S.C. § 1983 for deprivations of Due Process

and Equal Protection.  On November 5, 2007, Defendants filed a Motion to Dismiss or, in the

Alternative, for Summary Judgment (Paper No. 5).  On June 19, 2008, this Court granted

Defendants' Motion to Dismiss Enterprise Homes, Inc. as a Plaintiff for lack of standing and

granted Defendants' Motion to Dismiss the charges against the Commissioners in their

individual capacities (Paper No. 18).  Defendants' Motion to Dismiss the charges against the

Board of County Commissioners, and the Queen Anne's County Sanitary Commission was

denied as to all counts.

On April 15, 2009, Plaintiff filed a Motion for Partial Summary Judgment (Paper No.

41).  On April 29, 2009, Defendants filed a Motion for Summary Judgment (Paper No. 43).  A

hearing was held on these cross motions on December 15, 2009.  On December 17, 2009, this

Court granted Defendants' Motion for Summary Judgment as to Reverend Marie Robinson,

dismissing her for lack of standing (Paper No. 52).  On December 29, 2009, this Court granted

Defendants' Motion for Summary Judgment with respect to the claims of Terri Sorrell and

Lacrosse Homes, Inc., dismissing them for lack of standing, and granted Defendants' Motion as

to Plaintiff R.J. Investments, LLC's Due Process claim under the Civil Rights Act (Count III).

However, this Court denied said Motion as to the claims of R.J. Investments, LLC, alleging a

Fair Housing Act violation (Counts I and II) and an Equal Protection violation under the Civil

Rights Act (Count III).

The case then proceeded to a four-day bench trial conducted from March 8 through

March 11, 2010.  After opening statements, Plaintiff called as its expert witness Gerrit Knapp,

PhD, the executive director of the University of Maryland's National Center for Smart Growth,

to testify about the alleged disparate impact of Defendants' actions on potential minority

homebuyers.  Plaintiff also called the following four witnesses in its case in chief:  John Stamato,

a partner in R.J. Investments; Alan Quimby, the County's Chief Sanitary Engineer; Lindsay

Dixon, a partner in R.J. Investments; and Defendant County Commissioner Gene Ransom.  After

the testimony of the first five witnesses, Defendants called to the witness stand the remaining

members of the Board of Commissioners: Defendants Courtney Billups, Carol Fordonski, Paul

L. Gunther and Eric Wargotz.[1]  Defendants also called Peter Scanlon, who works for the

County's Department of Housing, and John Steven Cahoon, who is the County's Chief of Land

Use and Zoning.

Plaintiff has three remaining claims: violations of the FHA (Counts I and II), and

violation of the Equal Protection Clause brought pursuant to the Civil Rights Act (Count III).

Based on the exhibits, witness testimony and having heard legal arguments at trial, this Court

makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal

---

[1] All of the individual Defendant County Commissioners waived their rights of legislative
privilege and offered testimony in explanation of their votes on May 8, 2007, which denied
R.J.'s request for a water and sewage category amendment until there was appropriate capacity
by the water and sewage plant.

Rules of Civil Procedure, resulting in entry of Judgment for the Defendants on Counts I, II and III.

I.      **Findings of Fact**

        A.      **Background**

        On April 22, 2003, Hailey-Ribera, LLC, assigned a contract to purchase a large piece of property (the "Property") to Plaintiff R.J. Investments, LLC.  The Property is located in Grasonville, Queen Anne's County, Maryland, a rural agricultural county located on Maryland's Eastern Shore.  R.J., which is owned by John Stamato, Lindsay Dixon and M. Thomatz, subsequently prepared to develop a planned residential community on the Property.

        Defendant Board of County Commissioners (the "Board") plays a vital role in the development process for the County's properties.  The Board determines how development projects are designated for water and sewer service, and makes decisions on whether to amend such designations when a developer requests it.  When making these determinations, the Board sits as the Sanitary Commission.  To build on land in the County, a developer must demonstrate to the Board that the property can be adequately served by the County's sewer and water systems, and comply with a series of other environmental and regulatory requirements. Additionally, under a 2004 law, 10% of each new residential development of over 50 homes must consist of moderately-priced dwelling units ("MPDUs") that are affordable to homebuyers with lower than average incomes.

        In February 2006, Defendants adopted the 2006 Comprehensive Water and Sewerage Plan ("2006 CWSP"), which designated the Property, called Sayer's Choice, as W-3/S-3 – meaning that it could receive water and sewer service within 4 - 10 years.  This was a significant designation because under the new CWSP a developer could not proceed with the subdivision

process unless a property has a water and sewage designation of at least W-2/S-2 – meaning that

a property will receive water and sewer service within one to three years.  Thus, shortly after this

change in designation, R.J. applied for an amendment to the 2006 CWSP, seeking an upgrade to

W-2/S-2 so that it could continue with the development process.  In their application, R.J.

explained that Sayer's Choice was projected to consist of 127 single family homes and 41

townhomes.  The only affordable housing R.J. described in this application was the minimum

10% requirement of MPDUs (17 of the total 168 units).[2]

 After public hearings on February 27, 2007 and May 8, 2007,[3] Defendants unanimously

denied R.J.'s water and sewage category amendment request.  The primary reason Defendants

denied R.J.'s amendment request was because the existing water and sewage plant, the Kent

Narrows/Stevensville/Grasonville Waste Water Treatment Facility ("the KNSG facility"), was

insufficient to meet the needs of the proposed development.  However, Commissioner Paul

Gunther told Plaintiff that its application was only denied "at this point in time."  R.J. was then

explicitly told that it could reapply for an amendment once the sewer plant became operational.

The KNSG facility was expanded and fully operational one week later, on May 15, 2007.

Inexplicably, R.J. did not reapply at that point, but instead filed this lawsuit alleging, among

other things, violations of the Fair Housing Act and Equal Protection.

### B.    Disparate Impact

 Plaintiff alleges that Defendants' decision had a disparate impact on prospective minority

homebuyers.  Plaintiff's main support for this claim is a study composed by its expert witness,

Dr. Gerritt Knaap.  While there is no doubt as to Dr. Knapp's expertise, his report is insufficient

---

[2] Notably, a "donation parcel" that included significantly more affordable housing was not part
of the Sayer's Choice CWSP amendment application.  Thus, none of the Commissioners
considered the donation parcel when they denied R.J.'s amendment application.
[3] Defendants' Exhibits 27 and 34 are the DVDs of the complete proceedings before the Board of
County Commissioners for Queen Anne's County on those dates.

to support Plaintiff's disparate impact claim because of various flaws in its analysis.  First, Dr.

Knapp testified that he relied upon income and home price figures from the year 1999.  As John

Stamato admitted at trial, the earliest homes in the Sayer's Choice development could have been

built was 2009, thus Dr. Knapp's figures were significantly out of date.  Second, Dr. Knaap's

report does not take into account the in-migration patterns as to new residents in Queen Anne's

County, thus it does not discount the extent to which the area's decreasing percentage of

minority population was the result of Caucasians from outside the County moving into the area.

Along those lines, Dr. Knapp's report does not indicate what, if any, affect the 2005 real estate

bubble had on the influx of people moving into the area to buy property.  Third, Dr. Knapp's

report does not reflect the information provided by Peter Scanlon as to the nearby Ellendale

development project, which already has approved plans to build MPDUs.  As Scanlon testified at

trial, at this point in time merely four households have applied for an MPDU in the Ellendale

development, and none of the applicants are minority households.  Furthermore, only two of the

households that applied have qualified to purchase an MPDU, and neither have done so.

Correspondingly, Dr. Knapp's report does not address what affect, if any, the 2007 through 2008

economic climate had on the rate of home buying in the County during that period.  Therefore,

this Court finds that Dr. Knapp's report is fundamentally flawed and does not establish that

Defendants' actions had a disparate impact on potential minority homebuyers.

    Although this Court finds Defendants' actions did not result in a disparate impact, even

accepting Dr. Knapp's report in its entirety, Plaintiff could at best prove a minimal disparate

impact.  As Dr. Knaap admitted at trial, the disparate impact ratio was below what was required

to demonstrate a disparate impact in the Baltimore Primary Metropolitan Statistical Area.  Thus,

even assuming that Dr. Knaap's testimony established some sort of disparate impact, the impact

was not substantial.

### C.    Discriminatory Intent

R.J. also alleges that Defendants' decision to reject its amendment request was motivated

by racial animus.  However, the Board had legitimate, reasonable and non-discriminatory

reasons for denying the Sayer's Choice application.  This Court has thoroughly reviewed the

videos and transcripts of the February 27, 2007 and May 8, 2007 meetings.  (Def.'s Exs. 27 &

34.)  These make clear that the Board plainly denied R.J.'s application "at this point in time."

They also show that the Board's denial was based upon the lack of sewer capacity for the project

at that time, since the expansion of the KNSG facility plant was not yet online.  Tellingly, each

member of the Board, including Courtney Billups, the first African-American ever to be elected

to the County Board, declined to exercise his or her legislative privilege and testified that the

decision to deny Plaintiff's application was not motivated by any discriminatory intent.

Plaintiff's allegations that Commissioner Gene Ransom had improper motives when he

voted to deny its application have utterly no foundation.  Moreover, Plaintiff's main purported

evidence that Commissioner Ransom acted with discriminatory intent is its allegation that

Commissioner Ransom did not want Sayer's Choice to be developed because the Property is near

his home and would potentially increase traffic where he lives.  Even if this Court were to have

found that Commissioner Ransom had acted in such an improper manner, this claim would not

support R.J.'s contention that he acted with *discriminatory* intent.

Having heard all of the witness testimony, having reviewed the videos of the

proceedings, and having reviewed all the exhibits, this Court finds that there is not a scintilla of

evidence that the Board of County Commissioners for Queen Anne's County acted with racially

discriminatory intent.  Ultimately, after four days of trial, this Court finds as a factual matter that

the Plaintiff's case was based on conjecture and supposition.

## II.      Conclusions of Law

### A.      Fair Housing Act Claims (Counts I and II)[4]

With respect to the first two counts, the United States Court of Appeals for the Fourth

Circuit set forth several factors in *Smith v. Clarkton*, 682 F.2d 1055 (4th Cir. 1982) that this

Court must evaluate when determining whether Defendants violated the Fair Housing Act:

(1) How strong is the plaintiff's showing of discriminatory effect;
(2) Is there some evidence of discriminatory intent, though not enough to satisfy the
    constitutional standard of *Washington v. Davis*[,426 U.S. 229 (1976)];[5]
(3) What is the defendant's interest in taking the action complained of; and
(4) Does the plaintiff seek to compel the defendant to affirmatively provide housing for
    members of minority groups or merely to restrain the defendant from interfering with
    individual property owners who wish to provide such housing.

*Id.* at 1065.  These are clearly the factors established by the Fourth Circuit which this Court must

apply when evaluating a claim under the Fair Housing Act.

Applying the principles set forth in *Smith v. Clarkton*, there is insufficient evidence to

prove that Defendants' denial of R.J.'s amendment request violated the Fair Housing Act.  First,

Plaintiff failed to come forward with reliable evidence that Defendants' actions had a disparate

impact on minorities.  As explained above, Dr. Knapp's report is too flawed to make the "strong

showing" of disparate impact required under *Smith*:  The income and housing prices he relied

upon were out of date, the report did not account for in-migration patterns, and it disregarded the

---

[4] As explained in this Court's Memorandum Opinion (Paper No. 17), though Count II is titled
and phrased as a Civil Rights Act §1983 claim, it essentially alleges that Defendants have
violated Plaintiff's rights under the Fair Housing Act.  Thus, the same analysis applies to both
Counts I and II.
[5]  See *Thompson v. United States HUD*, 348 F. Supp. 2d 398, 417 (D. Md. 2005), explaining that
this factor means "i.e., is there some kind of 'mens rea,' though not necessarily the
discriminatory 'purpose' required by *Washington v. Davis* and its progeny."

drastic economic shifts over the last five years.  Perhaps most glaringly, Dr. Knapp's report does

not account for the fact that there are approved MPDUs currently awaiting qualified purchasers.

In *Hallmark Developers, Inc. v. Fulton County*, 466 F.3d 1276 (11th Cir. 2006), the

United States Court of Appeals for the Eleventh Circuit reviewed an expert report which

similarly contended that denying a development that included affordable housing resulted in a

disparate impact.  That expert opinion had not been credited by the district court.  In *Hallmark*,

the Eleventh Circuit held that the district court did not err in discounting this report, emphasizing

the district court's distinction that there was no shortage of available affordable housing.  As the

Eleventh Circuit explained:

> If there is a glut in the market of homes in Hallmark's projected price range, the
> lack of the Hallmark's particular development is not likely to have an impact on
> anyone, let alone adversely affect one group disproportionately . . . [A]dverse
> impact is consistently found when there is a housing shortage.

*Id*. at 1287.  Again, even if this Court *did* find Dr. Knapp's report established a disparate impact,

the report proves a minimal disparate impact at best.

Applying the second factor from *Smith v. Clarkton*, R.J. has not produced any evidence

of discriminatory intent.  The members of the Board clearly explained that their rejection of

Plaintiff's amendment request was temporary, and that they would reconsider the application

once the KNSG plant was online.  R.J.'s allegations regarding Commissioner Ransom's

improper motives have utterly no foundation.  The Board's actions were logical and consistent

with their decisions in other cases.  Third, the Board possessed a significant and legislative

interest in exercising their legislative prerogative to protect and preserve the County's valuable

sewer treatment resources, and thus the public safety, health and welfare.  Finally, the fourth

factor in *Smith v. Clarkton* does not favor either party.  While R.J. is merely seeking to restrain

Defendants from interfering with their development, R.J. is obliged to include affordable housing

in their proposed developments in Queen Anne's County as a result of requirement established

by the Board.  Plaintiff has quite simply failed to provide evidence to satisfy the fourth factor in

*Smith v. Clarkton*.  Accordingly, R.J.'s claims under the Fair Housing Act, Counts I and II, are

DENIED.

   **B.**   **Equal Protection Claim (Count III)**

   With respect to Count III, the Fourth Circuit has held in *Sylvia Development Corp. v.*

*Calvert County*, 48 F.3d 810, 819 (4th Cir. 1995) that in order to establish an Equal Protection

violation, a plaintiff cannot just prove that a benefit was denied to one party while conferred on

another, but also must show intentional or purposeful discrimination.  This discrimination can be

demonstrated through a facially discriminatory act, or by providing extrinsic evidence such that a

discriminatory system designed to favor one class over another can be inferred from the

circumstances.  *Id*.  In *Sylvia*, the Fourth Circuit recognized several factors that are probative of

whether a decision-making body was motivated by discriminatory intent:

> (1) evidence of a 'consistent pattern' of actions by the decision-making body
> disparately impacting members of a particular class of persons; (2) [the] historical
> background of the decision, which may take into account any history of
> discrimination by the decision-making body or the jurisdiction it represents; (3)
> the specific sequence of events leading up to the particular decision being
> challenged, including any significant departures from normal procedures; and (4)
> contemporary statements by decision-makers on the record or in minutes of their
> meetings.

*Sylvia Dev. Corp.,* 48 F.3d at 819 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*

429 U.S. 252, 266-68 (1977)).  With regard to the Equal Protection claim, R.J. failed to satisfy

any of the factors set forth in *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810 (4th Cir. 1995).

   There was absolutely no evidence at trial of any patterns of activity taken by the Board of

County Commissioners disparately impacting African-Americans.  The in-migration of white

residents, resulting in a decrease in the percentage of the African-American population, in no

way diminishes the efforts of County officials to address the need for low-income housing during

this period of population growth.  The County has in fact implemented a plan for low-income

and moderately priced housing.  This Court was particularly impressed by the testimony of

Defendant Commissioner Courtney Billups, the first African-American ever elected in Queen

Anne's County, who testified as to his pride in the growth of his adopted County.

There was no evidence at trial of any history of racial discrimination in Queen Anne's

County.  Like all Eastern Shore counties, it has experienced growth and has needed to address

issues of low-income housing in the face of such growth in population.  Furthermore, Defendants

produced evidence at trial demonstrating that there was no departure from normal procedures in

the denial of R.J.'s request for a water and sewage category amendment.  Indeed, the evidence at

trial leaves no doubt that the only departure was exhibited by R.J., when it declined the

opportunity to reapply for an amendment, and instead chose litigation.

Finally, in analyzing the factors set forth by the Fourth Circuit in *Sylvia Development*

*Corp. v. Calvert County*, this Court reiterates that it has reviewed the complete videos of the

hearings of February 27, 2007 and March 8, 2007.  The statements of Defendant County

Commissioners reflect a legitimate concern with respect to the capacity of the water and sewage

plant, and a sincere willingness to consider R.J.'s application once the capacity of that plant had

been increased.

As explained above, Plaintiff did not produce any direct or circumstantial evidence that

Defendants intentionally or purposefully discriminated against minorities when they rejected

R.J.'s sewer amendment request.  Accordingly, R.J's Equal Protection claim, Count III, is

DENIED.

**III.    Conclusion**

For the reasons stated above, Judgment is hereby entered in favor of Defendant the Board

of County Commissioners for Queen Anne's County, Maryland, the Queen Anne's County

Sanitary Commission, and the members of the Board of County Commissioners in their official

capacities, Eric S. Wargotz, Courtney M. Billups, Paul L. Gunther, Gene M. Ransom, III, and

Carol R. Fordonsky.  A separate Order and Judgment will follow.


Dated: March 15, 2010                          /s/_____
                                               Richard D. Bennett
                                               United States District Judge